UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

UNITED STATES LIABILITY INSURANCE
COMPANY,

                Plaintiff,                         **MEMORANDUM OF DECISION AND ORDER** on Motion for Summary Judgment (doc. #18)

                -v.-                             06-cv-1083 (DRH) (AKT)

TRANCE NITE CLUB, INC., d/b/a "IMAGE"
d/b/a "BEE JAYS BAR AND GRILL,"
JENNIFER McPHILLIPS, PATRICIA GUZMAN,
Individually and as Administratrix of the Estate of
NICHOLAS GUZMAN, deceased, CHESTER RODMAN,
Individually and as Administrator of the Estate of
NICHOLAS RODMAN, deceased,

                Defendants.
_____

**Appearances:**

**For the Plaintiff:**
**MIRANDA SOKOLOFF SAMBURSKY SLONE VERVENIOTIS LLP**
The Esposito Building
240 Mineola Boulevard
Mineola, NY  11501
By:    Steven Verveniotis, Esq.
        Adam I. Kleinberg, Esq.

**For Defendant Trance Nite Club, Inc., d/b/a "Image" d/b/a "Bee Jays Bar and Grill":**
**MARKOTSIS & LIEBERMAN**
183 Broadway, Suite 210
Hicksville, NY  11801
By:    George Neofitos, Esq.

**For Defendant Chester Rodman, Individually and as Administrator of the Estate of Nicholas Rodman:**
**TOLMAGE PESKIN HARRIS & FALICK**
20 Vesey Street, Suite 700
New York, NY  10007
By:    Stephan H. Peskin, Esq.

**HURLEY, Senior District Judge:**

This case arises from the renewal of a liquor liability policy which is a policy designed to cover an establishment from lawsuits relating to the service of alcohol. Plaintiff United States Liability Insurance Company ("Plaintiff" or "U.S. Liability"), an insurance company, seeks a declaratory judgment that it need not defend the insured, Defendant Trance Nite Club, Inc. d/b/a "Image d/b/a "Bee Jays Bar and Grill" ("Trance"), in a state-court wrongful death suit and that it may rescind the policy it issued to Trance on the basis of Trance's material misrepresentation made in its policy renewal application. Therefore, U.S. Liability moves for summary judgment. For the reasons stated below, U.S. Liability's Motion for Summary Judgment is GRANTED.

**I. BACKGROUND**

*A.    Material Facts*

The following facts are gleaned from the Parties' respective Local Rule 56.1 Statements[1] and are undisputed unless otherwise noted.

This dispute over insurance coverage and recision of an insurance policy arises in conjunction with a state-court wrongful death action. Defendant Chester Rodman initiated the suit after the death of his 19-year-old son, Nicholas Rodman. Nicholas died as a result of injuries he sustained on April 4, 2004, as a rear-seat passenger in an automobile operated by Nicholas Guzman. Guzman was also 19 years old and, at the time of the accident, had a blood alcohol level of .17, more than twice the legal limit. Guzman died immediately after the accident. In addition to suing Guzman's estate and Guzman's mother, Patricia, as well as

---

[1] U.S. Liability filed a "Statement of Undisputed Material Facts Pursuant to Local Rule 56.1" (doc. #21) and Trance filed a "Response to Plaintiff's Statement Pursuant to Local Rule 56.1" (doc. #25).

Defendant McPhillips (the driver of the other automobile involved in the April 4th accident), Chester Rodman also sued Trance, a bar establishment, based upon New York State's "Dram Shop Law."

In August 2002, U.S. Liability had issued Trance a liquor liability policy for a twelve-month period, expiring on or about August 20, 2003. Trance sought to renew that policy, submitting a renewal application on July 1, 2003. At that time, U.S. Liability quoted a renewal premium of $3,250. It maintains that the quote was based on a warranty of no violations relating to the illegal sale of alcohol; Trance disputes the assertion regarding a warranty as unsubstantiated. Examination of the renewal application shows there is a blocked section at the bottom of its second page which is entitled "WARRANTIES" and includes the signature block. The section reads, *inter alia*:

> I/we warrant that the information contained herein is true and that it shall be the basis of this policy of insurance and deemed incorporated therein, should the company evidence its acceptance of this application by issuance of a policy. I/we agree that such policy shall be null and void if such information is false, or misleading, or would materially affect acceptance of the risk by the company.

(U.S. Liability Renewal Application (signed July 1, 2003), attached as Ex. 8 to Pl.'s Not. of Mot. (doc. #18).[2])

One of the questions on the renewal application was: "If a bar or tavern, are patrons under the legal drinking age permitted on premises?" (*See* Ex. 8 at No. 27.) An affirmative

---

[2] As related to the subject Motion for Summary Judgment, all of Plaintiff's exhibits are numbered and all of Trance's exhibits are lettered. For convenience, hereafter all citations to Plaintiff's exhibits will be short-cited to the appropriate exhibit number only and all citations to Trance's exhibits will be short-cited to the appropriate exhibit letter only.

answer required an explanation. Trance answered in the affirmative, explaining that on occasion, its admission policy was 18-years of age for entrance, but 21-years of age to drink, and that it used bracelets to distinguish those who could purchase alcohol. (*See id.*)

Another question, Question No. 28, read: "Within the past 5 years, has applicant and/or employees of the applicant's establishment been <u>fined or cited</u> for violations of law or ordinance related to illegal activities or the sale of alcohol?" (*See id.* at No. 28 (emphasis in original).) Like the prior question, here, an affirmative answer required an explanation. Trance marked the "No" box. (*See id.*)

U.S. Liability first learned of Chester Rodman's wrongful death suit when it received a copy of the summons and complaint on January 31, 2005. Thereafter, the insurance company appointed counsel to represent Trance. In connection with the case, Jeffrey Cartman, Trance's president, appeared for a deposition in November 2005. Cartman testified, *inter alia*:

> Q: Between 2000 and 2004, has your bar ever been cited by the State Beverage and Control Board?
> Counsel: Over objection.
> Witness: What does that mean?
> Counsel: You can answer it.
> A: Have I ever been cited by the State Liquor Authority?
> Q: Yes.
> A: Yes.
> * * *
> Q: Were the violations issued to you personally, the citations issued to you personally, Jeffrey Cartman, or was it Trance Nite Club and you were appearing on behalf of the corporation?
> A: I was there on behalf of the corporation.
> Q: So the citation, you remember seeing the citation said Trance Nite Club?
> A: I believe so, yes.
> * * *
> Q: Now what about these under age violations?
> A: Yes

4

| | Q: | Are there more than one? |
|---|---|---|
| | A: | Yes. |
| | Q: | How many are there? |
| | A: | Four or five. Well, everything was dismissed. |
| | Q: | I don't care about that. How many were there? |
| | A: | Approximately four or five. |

(Cartman Dep. 87:12-20, 90:8-15, 88: 16-25, Nov. 4, 2005, attached as Ex. 10.) U.S. Liability avers that Cartman's deposition testimony appeared to contradict Trance's answer in its renewal application. Trance counters that Cartman's deposition answers and Trance's application answers are not contradictory "because the answers provided by Trance in such application were based upon its understanding of the questions in such application." (Trance's Response to Pl.'s Rule 56.1 Stmt. ¶ 24 (citing Cartman Aff. at ¶¶ 8-13).)

Concerned by Cartman's deposition testimony, U.S. Liability initiated an investigation into the matter which revealed that all the citations Trance received preceded Trance's submission of its renewal application, to wit: September 11, 2002, November 10, 2002, January 10, 2003, and June 15, 2003. Moreover, Cartman's deposition testimony showed that Trance had knowledge of these citations as of July 1, 2003–the date when it applied for a renewal of its liquor liability policy. In response to the inquiry, "Do you remember receiving the actual ticket in any of those cases?," Cartman responded, "Yes. I was present at the time *they* were issued." (Cartman Dep. 91:4-12 (emphasis added).)

U.S. Liability's underwriting guidelines instruct declining to underwrite a liquor liability policy where more than two citations or violations have been issued in the five years preceding the request for such policy. Thus, after learning of Cartman's prior knowledge of the four citations, and upon conclusion of its own investigation, U.S. Liability issued a letter to Trance informing Trance that U.S. Liability was rescinding its liquor liability policy and declaring the

5

policy void from its inception date, August 20, 2003. The letter further informed Trance that the basis for this action was Trance's material misrepresentation in its July 1, 2003 renewal application and had it known of the citations, the insurance company would not have issued the policy. (*See* Letter from J. Richard Petersen, Jr., V.P., Corporate Counsel, & C.C.O., U.S. Liability, to Trance Nite Club, Inc., DBA Image Bar & Lounge, c/o Jeff Cartman (Jan. 11, 2006), attached as Ex. 16.) U.S. Liability reimbursed Trance its insurance premium.

### B. *Procedural Background*

This summary judgment motion seeking declaratory judgment is filed to resolve the issue of insurance coverage in a state-court wrongful death suit, namely, *Chester Rodman, Individually and as Administrator of the Estate of Nicholas Rodman, Deceased, and Paul J. Barra v. Jennifer McPhillips, Patricia Guzman, Individually and as Administratrix of the Estate of Nicholas Guzman, Deceased, Trance Nite Club, Inc., d/b/a "Image" d/b/a "Bee Jays Bar and Grill,"* Index No. 11148/04, Supreme Court of the State of New York, County of Nassau. As a result of the death of Nicholas Rodman, Trance contacted U.S. Liability under its liquor liability policy which had been renewed in August 2003 for a twelve-month period. As previously stated, U.S. Liability initially appeared on behalf of Trance and proceeded to defend Trance. In the course of the state-court action, though, U.S. Liability learned of facts that caused it to rescind the policy, thus, denying Trance coverage. Trance challenges U.S. Liability's recision and refusal to defend. The insurance company now seeks a determination from this Court that, given the factual scenario presented, it is entitled to rescind the subject policy and cease defending Trance in the state-court action.

Here, U.S. Liability argues that it is entitled to rescind Trance's 2003 renewed liquor

liability policy because of Trance's material misrepresentation in its renewal application. The alleged material misrepresentation is Trance's negative response to the inquiry whether the establishment had been fined or cited regarding illegal activities or the sale of alcohol within five years preceding its renewal application. U.S. Liability offers independent evidence, to wit, its underwriting manual, that, but for the misrepresentation, it would not have issued the subject policy. Trance, in opposing U.S. Liability's application for summary judgment, argues that the subject question, Question No. 28, was ambiguous. As such, the ambiguity should be construed in the insured's, *i.e.*, Trance's, favor. Moreover, the insurance policy should be construed in Trance's favor because it is a contract of adhesion. U.S. Liability counters that Trance's ambiguity argument is disingenuous as a reasonable businessman in the bar business would understand what was being asked by U.S. Liability's question regarding fines or citations. Moreover, since Cartman's affidavit in opposition to summary judgment contradicts his earlier deposition testimony, it should be disregarded by the Court. The Court addresses these arguments *infra*.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wilkinson v. Russell*, 182 F.3d 89, 96-97 (2d Cir. 1999). The Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64

(2d Cir. 1995); *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990).

At its core, the Court's function in deciding a motion for summary judgment is "issue finding," not "issue resolution." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Vill. of Kiryas Joel Local Dev. Corp. v. Ins. Co. of N. Am.*, 996 F.2d 1390, 1392 (2d Cir. 1993) ("Our role is not to weigh the evidence or make determinations of credibility but to 'determine whether there is a genuine issue for trial.'" (quoting *Anderson*, 477 U.S. at 249)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in its pleadings, on conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

B.     ***Further Case Law Regarding Affidavits in Opposition***

"It is well settled in th[e Second Circuit] that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States*, 814 F.2d 120, 124-25 (2d Cir. 1987) (citing *Perma R & D Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)); *see also Gilani v. GNOC Corp.*, No. 04-cv-2935 (ILG),

8

2006 WL 1120602, at *3 (E.D.N.Y. Apr. 26, 2006). As Judge Glasser of this District astutely noted, "[i]f this were not the case, a party could raise an issue of fact simply by 'submitting an affidavit contradicting his own prior testimony,' greatly diminishing the utility of summary judgment as a means of determining genuine issues of fact." *Gilani*, 2006 WL 1120602, at *3 (quoting *Mack*, 814 F.2d at 124).

C.      *Ambiguity in Insurance Applications and Contracts*

> "Because insurance contracts are inevitably drafted by insurance companies, New York law construes insurance contracts in favor of the insured and resolves all ambiguities against the insurer. . . . This [] rule applies to questions on insurance applications where the insurance company seeks to avoid liability by citing the answers thereto as misrepresentations."

*First Fin. Inc. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 118 (2d Cir. 1999) (quoting *Vella v. Equitable Life Assurance Soc'y*, 887 F.2d 388, 391-92 (2d Cir. 1989)). In turn, determining whether the terms in an insurance application or of an insurance contract are ambiguous "is a question of law for the court to decide." *SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props, LLC.*, 445 F. Supp. 2d 320, 330 (S.D.N.Y. 2006) (citing *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998)).

> Ambiguity exists when a contract term suggests "more than one meaning *when viewed objectively by a reasonably intelligent person* who has examined the context of the entire integrated agreement and *who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business*."

*Id.* (quoting *World Trade Ctr. Props. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 184 (2d Cir. 2003)) (further citation omitted) (emphasis added). "When the terms of an insurance policy . . .

9

'are clear and unambiguous, the court should look no further than the language of the policy' itself." *Id.* (citing *Citigroup, Inc. v. Indus. Risk Ins.*, 336 F. Supp. 2d 282, 287 (S.D.N.Y. 2004), *aff'd*, 421 F.3d 81 (2d Cir. 2005)).

### D. *Material Misrepresentation*

Under New York law, "an insurance policy issued in reliance on a material misrepresentation is void from its inception." *Republic Ins. Co. v. Masters, Mates, & Pilots Pension Plan*, 77 F.3d 48, 52 (2d Cir. 1996) (citing N.Y. Ins. Law § 3105; further citations omitted); *see also Vella*, 887 F.2d at 391 (collecting N.Y. cases); *Carpinone v. Mut. of Omaha Ins.*, 265 A.D.2d 752, 754 (N.Y. 3d Dep't 1999) (instructing that under New York law, where insured makes material misrepresentation in insurance application, insurer entitled to rescind insurance policy) (citations omitted). However, "[t]he burden of establishing the existence of a material misrepresentation is on the insurer." *In re Worldcom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 465 (S.D.N.Y. 2005) (citing *First Fin. Ins. Co.*, 193 F.3d at 119).

> New York Courts have consistently held that to meet the burden of proof on materiality, an insurer must submit evidence of its underwriting practices with respect to similar applicants. A court may not rely merely on statements by representatives of the insurer that it would not have issued the policy but for the representation.

*First Fin. Ins. Co.*, 193 F.3d at 119 (quoted by *Worldcom*, 354 F. Supp. 2d at 465).

In the New York case of *Carpinone v. Mutual of Omaha Insurance*, the state court instructed that "[t]he materiality of an applicant's misrepresentation is ordinarily a factual question unless the insurer proffers clear and substantially uncontradicted evidence concerning materiality, in which event the matter is one of law for the court to determine." 265 A.D.2d at 754 (citing *Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.*, 53 A.D.2d 214, 216 (N.Y. 1st

Dep't 1976), *aff'd* 42 N.Y.2d 928 (1977) (further citations omitted)). In that regard,"to establish the materiality of a misrepresentation as a matter of law, [the insurer] [is] required to present documentation concerning its underwriting practices such as its underwriting manuals, rules or bulletins which pertain to insuring similar risks." *Id.* (citations omitted). Thus, where the insurer presented only an affidavit of its risk director and chief underwriter, "who merely asserted that–based upon [the insurance company's] underwriting guidelines then in effect–[the insurance company] would not have issued" the subject insurance policy if the insured had been forthright in his insurance application, the court concluded the evidence was insufficient to establish as a matter of law that the insured's misrepresentations were material. *See id.* at 754-55; *see also First Fin. Inc. Co.*, 193 F.3d at 119 ("summary judgment cannot be granted unless the insurer comes forward with proof that it would not have issued the policy had it known the undisclosed facts").

### E.     *The Instant Case*

####         1.     Cartman's Affidavit Contradicts His Prior Deposition Testimony

Having examined Cartman's Affidavit through the prism of applicable case law, the Court finds it does, indeed, contradict his prior deposition testimony. From his deposition testimony, it is clear Cartman understood what it meant to be cited; when asked whether his bar, Trance, had ever been cited, he responded by rephrasing the question and answering in the affirmative: "Have I ever been cited by the State Liquor Authority? . . . Yes." (Cartman Dep., 87:17-20, Nov. 4, 2005.) Yet, in his Affidavit in Opposition, regarding Question No. 28–the question that inquired whether Trance had "been fined or cited for violations of law or ordinance related to illegal activities or the sale of alcohol," (Pl.'s Ex. 8, at No. 28)–Cartman stated he

11

understood the question

> to be asking whether Trance had pled guilty or been convicted of any violations it may have received. I believed that was the question being asked because the question stated whether Trance had been 'fined', and as far as I have always understood[,] someone doesn't pay a fine unless they've [sic] pled guilty to or are convicted of a charge.

(Cartman Aff. at ¶ 9.) He further posits in his Affidavit, "[i]f the Insurance Renewal Form had asked whether Trance had been *issued* any violations or citations, I would have answered yes, because at that point in time Trance had been issued four violations since its last insurance renewal." (*Id.* at ¶ 13 (emphasis in original).) The Court finds Cartman's subsequent explanation in his Affidavit spurious. "To be cited" and "to be issued a citation" are sufficiently synonymous that it is unbelievable that Cartman should be confused about what U.S. Liability was asking in Question No. 28. The exclusion or inclusion of the word "issuance" is of no consequence. Moreover, the fact that Cartman's deposition answers about being cited where not in direct response to issues regarding Question No. 28 does not negate the fact that, in his Affidavit in Opposition, Cartman contradicts his own prior deposition testimony, *i.e.*, that Trance was cited for violations. It is plain to the Court that Cartman is attempting to raise an issue of fact to defeat U.S. Liability's Motion for Summary Judgment; his attempt fails.[3] Therefore, the Court shall disregard Cartman's Affidavit in Opposition.

    2.    <u>There Was No Ambiguity in U.S. Liability's Renewal Application</u>

Trance attempts to make much of the alleged difference between "being cited" versus

---

[3] Even if the Court were to consider Cartman's Affidavit in Opposition, it would be insufficient to raise a question of fact about the alleged ambiguity of U.S. Liability's Renewal Application, in particular, Question No. 28. See Part II(E)(2), *infra*, for further discussion of Trance's ambiguity argument.

"being issued a citation"; for all intents and purposes, there is none.[4] At most, the first phrase is active voice, while the second phrase is passive voice. Of significance here, though, is that the two phrases convey the same meaning. Viewed objectively, there is no suggestion of more than one meaning for "cited." This conclusion is even stronger when examined from the viewpoint of a reasonably intelligent business person in the bar business who is cognizant of the customs, practices, usages and terminology as generally understood in the bar business. *See, e.g., World Trade Ct. Props.*, 345 F.3d at 184. Indeed, Cartman's own deposition testimony evinces his understanding of what it meant to be cited.

Moreover, the Court finds dubious Trance's attempt to focus only on the term "fined" while ignoring the additional term "cited" when Question No. 28 specifically emphasized both terms–"<u>fined or cited</u>". While it is true, as Trance argues, that the term "fined" implies a determination of violation thereby warranting the imposition of a fine, this implication does not compel the conclusion that an additional inquiry about citations can be disregarded or ignored. Rather, viewed objectively, it is clear that by the use of the disjunctive "or" U.S. Liability was asking whether either of two different situations had occurred, namely, had Trance been fined for violations of laws or ordinances related to illegal activities or the sale of alcohol *or* had it been cited for such violations. The Court is hard-pressed to see how a reasonably intelligent businessperson in the bar business would understand Question No. 28 to be asking only about having pled guilty to or having been convicted of such violations by the emphasized phrase

---

[4] Webster's Third New International Dictionary defines the verb "cite" as "to call upon officially or authoritatively to appear before a court," and "summon". Webster's Third New Int'l Dictionary 411 (3d ed. 1986). As for the noun "citation," the dictionary provides the following definitions, *inter alia*: "an official summons giving notice to a person to appear (as before a tribunal of justice)" and "summons". *Id.*

13

"fined or cited" as Plaintiff argues in opposition. (*See* Trance's Opp'n Mem. at 9-10.) While "fined" suggests one scenario and "cited" suggests another, the fact that U.S. Liability asked about these two different situations in one question does not provide either term with more than one meaning within the context of the bar business. Thus, simply because U.S. Liability could have posed Question No. 28 as two separate questions, as Trance suggests, does not render that question ambiguous. The Court finds, as a matter of law, no ambiguity exists here.

      3.      Trance Made a Material Misrepresentation in its Renewal Application

In the instant case, to establish Trance's material misrepresentation, U.S. Liability submitted the Affidavit of Leonard Scheurle, an underwriter with the insurance company, together with its "Liquor Liability Home Office Referral Underwriting Guide" (the "Underwriting Guide"). (*See* Scheurle Aff., attached as Ex. 7.) Under oath, Scheurle contends, *inter alia*:

- U.S. Liability uses the information is collects in its policy applications "to determine whether or not it will afford coverage to the applicant; what type of coverage it will afford to the applicant; the scope of coverage provided; and the premium it will charge" (Scheurle Aff. at ¶ 20);

- U.S. Liability's Underwriting Guide instructs, *inter alia*, that "[a]ny risk with more than 2 citation [sic] or violations at one location within the past 5 years should be declined or nonrenewed" and "[a]ny risk with more than 2 citations or violations at one location with less than 5 years in business (either new business or new management) should be declined," (*Id.* at ¶ 21 (citing Underwriting Guide, "Citations/Violations," at (unnumbered) 4); and

- But for Trance's material misrepresentation regarding the four citations it received during the twelve months preceding the August 2003 renewal of its liquor liability policy, U.S. Liability would not have issued the August 2003 renewal policy (*see id.* at ¶ 22).

Having examined U.S. Liability's evidence on material misrepresentation through the prism of applicable case law, the Court finds the insurance company has met its burden of proof. *See In re Worldcom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 465 (S.D.N.Y. 2005) ("an insurer must submit evidence of its underwriting practices with respect to similar applicants" (quoting *First Fin. Ins. Co.*, 193 F.3d at 119)). Conversely, having found Cartman's Affidavit unworthy of consideration, (*see, supra*, Part II(E)(1)), Trance fails to offer any opposition evidence that creates a disputed material fact on the issue of material misrepresentation. Rather, from Cartman's deposition testimony, the evidence shows that Trance knew of the four citations it received within the year preceding its application for a renewal of its liquor liability policy with U.S. Liability, but it failed to disclose this information as clearly asked in U.S. Liability's renewal application. Thus, presented with clear and substantially uncontradicted evidence on the issue of material misrepresentation, no genuine issue of material fact exists; therefore, U.S. Liability is entitled to summary judgment as a matter of law.

The Court has considered Trance's other arguments and finds them without merit.

### III. CONCLUSION

Plaintiff's Motion for Summary Judgment is GRANTED. Thus, this Court declares:

(1) U.S. Liability has no obligation to afford a defense or indemnity to Trance Nite Club, Inc. D/b/a "Image" d/b/a "Bee Jays Bar and Grill" in the action brought before the Supreme Court of the State of New York, County of Nassau, entitled *Rodman v. McPhillips et al.*,

Index No. 016084/04; and

(2) U.S. Liability is entitled to rescission of its Liquor Liability Policy NO. CL1131383A, issued to Trance Nite Club, Inc. D/b/a "Image" d/b/a "Bee Jays Bar and Grill".

**SO ORDERED**.

Dated: Central Islip, N.Y.
September 24, 2007

/s/
Denis R. Hurley,
United States Senior District Judge